UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                          )
                                )
Vance W. Agee,                  )          Case No. 10-80545C-7D
                                )
        Debtor.                 )

## MEMORANDUM OPINION

This case came before the court on January 6, 2011, for hearing on the objection to the Debtor's second amended claim for property exemptions filed by the Trustee in this case, John A. Northen.  Stephanie Osborne-Rodgers appeared on behalf of the Trustee and James W. Tolin appeared on behalf of the Debtor, Vance W. Agee.  Having considered the Debtor's second amended claim for property exemptions, the Trustee's objection, the evidence and arguments offered at the hearing and the other matters of record, the court makes the following findings of fact and conclusions of law pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding which this court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

FACTS

The petition in this case was filed on March 25, 2010, and sought relief under chapter 7 of the Bankruptcy Code. The Debtor's Schedule I states that the Debtor was a self-employed mechanic when this case was filed. However, that employment was of fairly recent origin. The evidence at the hearing showed that until October of 2008, the Debtor was an employee, officer and a principal shareholder in Southern Parts of Perco, Inc., a corporation that operated a NAPA auto parts store in Roxboro, North Carolina. The Debtor was active in the business until it closed in October of 2008. Although the Debtor's employment in auto parts business ended at that point, he continued as an officer and shareholder of Southern Parts of Perco, Inc.

Debtor's initial filings on March 25, 2010, included a claim for property exemptions. The Debtor's first amendment to his claim for property exemptions was filed on August 9, 2010, and sought to add to his claim for property exemptions his interest in "settlement funds from Benson York Group, Inc. and others" which the Debtor valued at $15,000. As will be discussed more fully infra, the Debtor did not disclose the "settlement funds" in his initial schedules and continued to collect and retain the settlement proceeds even after the commencement of this case. The existence of the settlement proceeds was disclosed by the Debtor in amended schedules that were filed on August 9, 2010, along with the

amended claim for property exemptions.  This disclosure by the Debtor, however, came only after the existence of the settlement funds had come to the attention of the Trustee from another source and the Trustee had demanded turnover of the settlement proceeds collected by the Debtor after this case was commenced.

The Trustee objected to the first amendment to the claim for property exemptions on August 20, 2010, asserting bad faith on the part of the Debtor in failing to disclose the settlement funds in his initial schedules and statement of financial affairs.  The Debtor resolved this objection pursuant to a settlement in which he relinquished any claim to the settlement funds by agreeing to turnover to the Trustee all settlement funds that were received by him after the petition date and agreeing that future payments of the settlement funds would not be exempt property.

The second amendment to the Debtor's claim for property exemptions was filed on December 1, 2010.  This time the Debtor added to his exemption claim property described as "personal injury claim against Rodney Charles DeLorenzo" which the Debtor claimed as exempt pursuant to N.C. Gen. Stat. § 1C-1601(a)(8).  The personal injury claim was not disclosed in the Debtor's initial schedules and statement of financial affairs nor in the amended schedules filed on August 9, 2010; and, again, the disclosure of the new asset came after the Trustee had learned of its existence and made demand upon the Debtor for information regarding the claim.

- 3 -

On December 3, 2010, the Trustee filed the objection now before the court.  In the objection, the Trustee has objected to the second amended claim for property exemptions on the ground of bad faith on the part of the Debtor in failing to disclose the personal injury claim in his previous filings and on the ground that creditors would be prejudiced by the allowance of the amended claim for property exemptions.

The issue for determination is whether the Debtor's amended claim for property exemption should be disallowed because of bad faith on the part of the Debtor in not disclosing the existence of the personal injury claim earlier or because creditors would be prejudiced if the amended claim were allowed.

ANALYSIS

Rule 1009 of the Federal Rules of Bankruptcy Procedure provides that a voluntary petition, list, schedule or statement may be amended by the debtor "as a matter of course at any time before the case is closed."  The reference to "schedule" in Rule 1009 includes the claim for exemptions.  See In re Cudeyro, 213 B.R. 910, 915 (Bankr. E.D. Pa. 1997).  Rule 1009 represents a "permissive approach" to amendment of bankruptcy schedules and, ordinarily, a court does not have discretion to deny leave to amend the schedules or to require a showing of good cause before an amendment is allowed.  See Tignor v. Parkinson, 729 F.2d 977, 978 (4th Cir. 1984).  Nevertheless, as recognized in Tignor,

- 4 -

exceptional circumstances such as bad faith on the part of a debtor or prejudice to the trustee or creditors may prevent the debtor in bankruptcy from amending the petition or schedules.  See id. at 979;  In re Doan, 672 F.2d 831, 833 (11th Cir. 1982).  Neither bad faith nor prejudice are presumed merely because of delay in claiming an exemption or because the amendment, if allowed, will result in property being exempted from the estate.  See Tignor, 729 F.2d at 979.  Instead, bad faith generally is determined from the totality of the circumstances.  See In re Kaelin, 271 B.R. 316, 321 (8th Cir. BAP 2002).  And, one circumstance that is strongly indicative of bad faith is an attempt on the part of the debtor to conceal an asset.  See In re Cudeyro, 213 B.R. at 918.

Based upon a consideration of the totality of the circumstances of this case, the court finds that the Debtor's failure to earlier disclose the personal injury cause of action involved deception and bad faith on the part of the Debtor and that the Trustee's objection to the second amended claim for property exemptions therefore should be sustained and the asserted exemption of the personal injury claim denied.

The totality of the circumstances in this case include a pattern of conduct exhibited by the Debtor from the outset of this case that reflects bad faith on the part of the Debtor.  This pattern of conduct has included a failure to disclose assets, litigation and transactions that clearly should have been disclosed

by the Debtor in his schedules and statement of financial affairs. Perhaps the two most flagrant omissions from the schedules were the personal injury claim that the Debtor now seeks to exempt and Debtor's settlement with the Benson York Group, both of which were first disclosed by the Debtor when he sought to amend his schedules in order to exempt the personal injury claim and the Benson York settlement. Neither of these assets were mentioned anywhere in the Debtor's initial filings even though both are property of the Debtor that should have been listed in his Schedule B.

The personal injury claim that the Debtor seeks to exempt arose out of an automobile accident that occurred on October 15, 2009, some six months prior to the commencement of this case.[1] It is undisputed that the Debtor sustained bodily injuries in the accident as well as damage to his truck. The Debtor retained counsel immediately following the accident to prosecute a personal injury claim on his behalf. By the time the Debtor filed for bankruptcy in March of 2010, it was clear to the Debtor that some amount of recovery for his personal injury would be forthcoming

---

[1]Since the claim arose pre-petition, the claim became property of the estate pursuant to section 541 of the Bankruptcy Code when this case was filed. See United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983); In re Swift, 129 F.3d 792, 795 (5th Cir. 1997); In re Clark, 274 B.R. 127, 132 (Bankr. W.D. Pa. 2002); Neville v. Harris, 192 B.R. 825, 830 (D.N.J. 1996); In re Davis, 158 B.R. 1000, 1002 (Bankr. N.D. Ind. 1993); 5 COLLIER ON BANKRUPTCY ¶ 541.08 (15th ed. rev. 2002).

because the adverse insurance carrier already had paid the Debtor some $18,500 in settlement of his claim for the damage to his truck and personal property that was in the truck at the time of the accident.   Although suit had not been filed against the adverse driver, it is clear that when he filed for bankruptcy, the Debtor was in the process of pursuing a claim to recover damages for the bodily injuries he sustained in the accident on October 15, 2009, and was being advised by a personal injury attorney concerning such claim.   The Debtor's commitment to pursuing the claim is evidenced by the fact that he was keeping a diary in which he was documenting the nature and effect of his injuries and the treatment he was undergoing.

During late February or early March of 2010, the Debtor disclosed to his personal injury attorney, Ronnie King, that he was considering filing for bankruptcy.   At that point, Mr. King told the Debtor that he would need to consult a bankruptcy attorney if he wanted to file for bankruptcy and recommended that he consult James W. Tolin, Jr., an experienced bankruptcy attorney.   The Debtor followed Mr. King's suggestion and thereafter employed Mr. Tolin who filed this case on behalf of the Debtor on March 25, 2010.

As noted earlier, the personal injury claim is not mentioned in the schedules or the statement of financial affairs that were filed.   The Debtor apparently does not contend that he forgot about

- 7 -

the personal injury claim when he filed this case.  Instead, the Debtor testified that before he went to Mr. Tolin, he had discussed with Mr. King whether he would need to include the personal injury claim in a bankruptcy filing and that his impression from talking with Mr. King was that he would not need to list the personal injury claim because no suit had been filed.  Although the Debtor provided no details regarding the alleged discussion with Mr. King, he testified that he did not disclose the personal injury claim to Mr. Tolin or list it in his schedules based on the earlier conversation with Mr. King.  Mr. King was not called as a witness and has not verified that such a discussion occurred and, given that Mr. King recommended that the Debtor employ a bankruptcy attorney when a bankruptcy filing was broached by the Debtor, it seems doubtful that Mr. King would have provided legal advice regarding bankruptcy questions.  Moreover, if the Debtor was concerned enough to ask Mr. King about whether the personal injury claim should be included in the bankruptcy filing, it certainly would appear that he would have made such an inquiry of Mr. Tolin, the attorney who was going to file the bankruptcy case and who had been recommended by Mr. King.  There are other circumstances that indicate that the Debtor simply chose not to disclose the personal injury claim.  Paragraph eight of the exemption form has a line for listing whether the debtor has a right to receive compensation for personal injury to the debtor.  In the Debtor's original claim for

property exemptions the Debtor listed "None" on the line for listing the amount of compensation which the debtor is entitled to receive for "personal injury to debtor." A further indication that the Debtor simply did not want to disclose the claim is found in paragraph eight of the Debtor's statement of financial affairs which requires a debtor to list all losses from fire, theft or other casualty within one year immediately preceding the commencement of the bankruptcy case. The automobile accident that occurred on October 15, 2009, was a casualty that heavily damaged the Debtor's truck and contents to the extent of some $18,500 and thus fell within paragraph eight. Rather than making a disclosure of the October 15, 2009 accident that could have led to the discovery of the personal injury claim by a trustee or interested creditors, the Debtor's response in paragraph eight was "None." The Debtor is an experienced businessman who admittedly has no trouble reading and understanding documents. He testified that he read the schedules and statement of financial affairs before they were signed by him and filed with the court. The foot surgery described by the Debtor occurred ten days before he signed the schedules, was done on an outpatient basis, was followed by a normal recovery and did not impair the Debtor's ability to read the documents that he signed and to discern inaccuracies and omissions that were present.

The court thus does not find to be credible the Debtor's testimony that the reason he did not disclose the personal injury claim was because of an earlier discussion with Mr. King. The irony, of course, is that if the Debtor in this case had proceeded honestly and in good faith and disclosed the claim to his bankruptcy attorney, such disclosure would have inured to the Debtor's benefit since he would have been told that the claim could be exempted. Unfortunately for the Debtor, this post mortem observation does not remove or excuse his bad faith in failing to disclose the personal injury claim when he was required to do so.

Similarly, the Debtor did not disclose the settlement with the Benson York Group when he filed this case. This was a settlement in the amount of $60,000 from which the Debtor already had received the first installment payment when he signed his petition and commenced this case. As such it obviously fell within the requirement under Schedule B that the Debtor "list all personal property of the debtor of whatever kind." Likewise, the proceeding giving rise to the settlement was still pending and should have been, but was not, listed by the Debtor in paragraph four of the Statement of Financial Affairs which requires a debtor to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." The date of the unlisted settlement was January 18, 2010, only two months before this case was commenced on

March 25, 2010.  The settlement was highly significant from the Debtor's perspective in that it involved a claim against financial advisers who had mismanaged and, according to the Debtor, lost more than $600,000 that the Debtor had invested with them and involved an initial settlement amount of $60,000 that was to be paid to the Debtor.  The significance of the settlement and the close timing between the settlement and the commencement of this case strongly indicates that the settlement is not something that would have faded from the Debtor's memory before he signed the schedules and statement of financial affairs.  The omission of any mention of the settlement thus cannot be passed off as only being a matter that slipped from the Debtor's memory.  Given these circumstances, the court finds that this omission from the schedules, as with the omission of the personal injury claim, was deliberate, not inadvertent, and was done with the intent to conceal the settlement.

There are further omissions and inaccuracies in the schedules that indicate bad faith on the part of the Debtor regarding the schedules and statement of financial affairs that he filed in this case.  Although the Debtor was a shareholder in Southern Parts of Perco, Inc. when this case was filed, the Debtor did not disclose such stock ownership in Schedule B, instead indicating "none" on the line calling for a listing of "stock and interests in incorporated and unincorporated businesses."  A similar inaccuracy

- 11 -

occurred in the Debtor's response to paragraph 18 of the statement of financial affairs which requires that a debtor list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation within six years immediately preceding the commencement of the case.  Rather than listing Southern Parts of Perco, Inc. and disclosing the required information, the Debtor's response was "None" which was false since the Debtor was an officer and director of Southern Parts of Perco, Inc. well within the six years preceding the commencement of this case. Another omission occurred with respect to paragraph 4 of the statement of financial affairs which requires that a debtor list all suits and administrative proceeding to which the debtor is or was a party within one year immediately preceding the commencement of the bankruptcy case.  There, in addition to failing to list the proceeding involving the Benson York Group, the Debtor also failed to list a suit against the Debtor brought by Genuine Parts Company that was pending in the Superior Court of Person County when this case was commenced.  The copy of the complaint that was offered into evidence in this case includes fraudulent conveyance claims involving conveyances of real estate by the Debtor that are described in detail and as well as allegations showing Debtor's involvement with Southern Parts of Perco, Inc.   Information

- 12 -

regarding questionable real estate conveyances by the Debtor and evidence of the Debtor's ownership interest in Southern Parts of Perco, Inc. certainly would have attracted the attention of a bankruptcy trustee. Debtor's concealment of the Genuine Parts suit enabled the Debtor to initially keep this information from creditors and the Trustee.

The pattern of misleading inaccuracies and omissions by the Debtor continued at the section 341 meeting of creditors. Between the filing of the petition and the date of the meeting of creditors, the Debtor received three installment payments pursuant to the Benson York Settlement. The last of these payments was received on June 2, 2010, only nine days before the Debtor testified under oath at the meeting of creditors on June 11, 2010. Yet, when the Debtor was asked early is his examination whether he listed all of his debts and assets in his schedules, he answered in the affirmative with no mention of the recent Benson York settlement. The Benson York settlement came to light later in the meeting when a creditor specifically inquired whether a proceeding was underway to recover investment losses sustained by the Debtor. While the Debtor acknowledged that such a proceeding was underway, his answers to questions about the proceeding involving the Benson York Group were deliberately deceptive and misleading. When asked about the status of his claim involving the loss of the invested funds, the Debtor, without mentioning that there already had been

- 13 -

a partial settlement of the claim, answered that there was "no status to report at this time." When the creditor followed up with a question as to whether there was a suit pending, the Debtor still did not disclose the Benson York settlement. Instead, he acknowledged that a suit was still pending and, in an answer seemingly intended to head off questions about whether any recovery had occurred, added that "we're trying to find the account manager and serve him papers, but we haven't been able to serve him." When the creditor persisted and asked Debtor specifically whether there had been any recovery, the Debtor still did not disclose that there had been a settlement with the Benson York Group under which he was to be paid $60,000. Instead, the Debtor answered: "I _believe_ there has been a few dollars have been recovered from that." (Emphasis added). Of course, at that point the Debtor did not just "believe" that there had been a recovery—he knew to a certainty that there had been a recovery of more than a "few dollars" and it was misleading to say otherwise. Even when asked specifically about the amount of the "few dollars" of recovery, the Debtor still did not reveal the settlement nor accurately state the amount of the recovery under the settlement, stating, instead: "I think it's a total of 30,000." As these excerpts illustrate, the Debtor's sworn testimony at the meeting of creditors ranged from being outright false, as when he stated at the outset that all of his assets were listed in his schedules, to being selectively incomplete and

- 14 -

misleading, as when he was confronted with direct questions about the claim involving Benson York and gave testimony in which he first sought to conceal that there had been a settlement and then sought to minimize the amount of the settlement. Such testimony strongly indicates that the earlier omissions from his schedules were not innocent and inadvertent lapses in memory but, instead, were deliberate and intended to conceal the omitted assets.[2]

Based upon the foregoing, the court concludes that the Trustee's objection to the Debtor's second amended claim for property exemptions should be sustained and that Debtor's second amended claim for property exemptions should be disallowed to the extent the second amended claim for property exemptions includes the personal injury claim referred to in the second amended claim. An order so providing shall be entered contemporaneously with the filing of this memorandum opinion.

This 2nd day of February, 2011.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[2]Having concluded that there was bad faith on the part of the Debtor, the court need not address the other grounds relied upon by the Trustee in the objection to Debtor's second amended claim for property exemptions.

PARTIES IN INTEREST


Vance W. Agee
37 jack Hambrick Road
Roxboro, NC 27574

Stephanie Osborne-Rodgers, Esq.
P.O. Box 2208
Chapel Hill, NC 27515-2208

James W. Tolin, Esq.
112 S. Main Street
Roxboro, NC 27573

Michael D. West, Bankruptcy Administrator